# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**PAUL SINKFIELD,**
    **Petitioner,**

**v.**                                          **No. 3:04cv111/MCR/MD**

**JAMES V. CROSBY,**
    **Respondent.**

_____

## REPORT AND RECOMMENDATION

      Before the court is an amended petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 6). Respondent has filed a response (doc. 19) to which petitioner has replied (doc. 21). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND and PROCEDURAL HISTORY[1]

In the early morning hours of April 14, 1998 Jessica Alderman and Clayton Moore, who lived together, went driving in a residential neighborhood of Pensacola, Florida in search of some marijuana. Alderman was driving and Moore was in the passenger seat. They stopped to talk to two men, who got in the back seat. The man on the left side asked if they wanted crack cocaine, and got out of the car when they declined. Defendant Sinkfield, petitioner here, was sitting on the right side of the back seat, and told Alderman to drive to a nearby house. Petitioner got out of the car, went into the house, and returned with a plastic bag. Alderman and Moore did not want what was in the bag; Moore said he thought it looked like parsley. Petitioner then pulled out a knife, held it to Moore's neck, and allegedly tried to take a gold chain Moore was wearing. Alderman tried to stop him and was cut on the hand. She accelerated and then braked the car and she and Moore were able to push petitioner out of the car. Moore was cut behind his ear and at his elbow and was treated at the emergency room. Alderman said the cut on her hand was small and she didn't bother to tell anyone about it at the time.

The police were unable to find any meaningful fingerprints in the car. Alderman and Moore, separately and on different dates, identified petitioner on a photo line-up. Alderman also positively identified the petitioner in the courtroom. On cross-examination Alderman testified that it was dark, but that there was light from a streetlight, and there were lights on in the house they drove to. On redirect Alderman testified (without prompting by the prosecution) that there was an interior dome light in the car, and that it came on when petitioner got out at the house and when he returned. Moore testified that he turned on the interior light to look at the

---

[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution. When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984). Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the court's analysis.

*Case No: 3:04cv111/MCR/MD*

plastic bag and also looked at petitioner, and at trial positively identified petitioner as the assailant.

Petitioner was charged in a three count information with (1) aggravated battery with a deadly weapon (Alderman), (2) aggravated battery with a deadly weapon (Moore), and (3) attempted robbery. The jury found him not guilty on counts one and three, and guilty on count two. Petitioner was sentenced as an habitual felony offender to a fifteen year term of imprisonment.

Petitioner appealed unsuccessfully, and then filed a timely motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, which was denied without a hearing but with a written opinion (exh. M). Petitioner failed to file a timely appeal, but later filed a petition for belated appeal (exh. N), which was denied (exh. O). He then filed a motion to correct illegal sentence (exh. P), which was denied (exh. Q). The appellate court affirmed denial of that motion (exh. T). Petitioner then sought state habeas relief, which was denied (exh. V). Respondent's earlier motion to dismiss the instant federal habeas petition as untimely was denied (docs. 16, 18).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

**28 U.S.C.A. § 2254 (2002).**

**The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:**

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

**120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).**

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from

Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified

that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

### PETITIONER'S GROUNDS FOR RELIEF

1. **Ineffective assistance of counsel - failure to call alibi witnesses.**

For his first ground for relief, petitioner contends that his attorney was constitutionally ineffective in failing to call two alibi witnesses, his mother and his girlfriend, who were present in the courtroom and prepared to testify that he was at home at the time of the offense. Respondent contends that this claim was not properly exhausted. It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[2] thereby giving the State the "'opportunity to pass

---

[2]Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i) there is an absence of available State corrective process; or

upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

---

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Case No: 3:04cv111/MCR/MD*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.*

As was noted above, petitioner's 3.850 motion was denied, and he failed to file a timely appeal. He later requested leave to file a belated appeal. He contended in the state court, as he does here, that he was in administrative or solitary confinement during the period within which he could file a notice of appeal, and was thereby prevented from appealing because his inmate requests for assistance from the institutional law library were ignored (exh. N). His request for a belated appeal was denied (exh. O), specifically on the basis of *Jordan v. State*, 549 So.2d 805 (Fla. 1st DCA 1989). In *Jordan* the court denied a prisoner a belated appeal, holding that even if prison officials failed to give him access to a prison library, that was insufficient to justify granting a belated appeal, because "[w]e do not believe that access to a law library is necessary to prepare and file a simple notice of appeal." *Id.,* at 806. The state court's procedural ruling constitutes an independent and adequate state rule of decision. Therefore, this ground for relief is procedurally defaulted. *Coleman, supra.*

Petitioner attempts to circumvent his default by claiming he is actually innocent. If a habeas petitioner is unable to show cause and prejudice, a federal habeas court can still reach the merits of a claim if there has been a miscarriage of justice. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it

is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Petitioner here cannot meet that burden.  He argues that he was not involved in the offense because he was at home with his mother and girlfriend at all relevant times.  Had they been allowed to testify, he says, the jury would have acquitted him.  He buttresses this argument by pointing out that he was in fact acquitted of any crime against Ms. Alderman, which he says shows that the jury disbelieved her, and that with his alibi witnesses, the jury would not have believed Mr. Moore either.  This argument fails on several grounds. First, the proposed testimony of petitioner's alibi witnesses is not "new."  This evidence was known and available to petitioner at the time of trial.  Second, petitioner was charged with assaulting Alderman, but the evidence at trial, which Alderman freely admitted, was that she reached for petitioner to save Moore, getting cut in the process, and that petitioner did not intentionally assault her.  The resulting acquittal arose from the prosecution not being able to prove its case, not because the jury disbelieved Alderman.

Third, the jury clearly believed Moore - hence the conviction - and Moore positively identified petitioner at a photo line-up and in open court.  Moore testified that he had a clear look at petitioner's face even in the relative darkness, in part because he turned on the dome light to look at the plastic bag and at petitioner's face.  He did not retreat from that testimony.  Had the alibi witnesses testified, the jury may have, and a reasonable jury could have, believed the alibi witnesses and disbelieved Moore. The test, however, is whether with the alibi witnesses testifying, "it is more likely than not that <u>no</u> reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327 (emphasis added).  Just as a reasonable jury could have believed the alibi witnesses, a reasonable jury, or any reasonable member of a jury,

could have disbelieved the alibi witnesses and believed Alderman and Moore. Petitioner cannot show that this is one of the "extremely rare" cases in which a miscarriage of justice has occurred.

Finally, the alibi witnesses did not qualify as the sort of "trustworthy witnesses" contemplated by *Schlup*. There, a prisoner (Schlup) was convicted of murdering a fellow inmate. His proof of actual innocence came from (1) a videotape that showed him to be in the prison dining room when the murder took place some distance away, (2) the statement of a prison clerk who corroborated the time that the alarm sounded (in relation to the time Schlup entered the dining room) when there was no reason for the clerk to know that the timing made a critical difference, (3) an affidavit from a prison lieutenant who observed Schlup for over two minutes as he walked to the dining room, and who stated that Schlup was not hurrying, perspiring, or breathing hard, which would have been the case had he gone from the murder scene in time to arrive in the dining room when the videotape placed him there, and (4) affidavits from black inmates attesting to the innocence of Schlup, a white defendant, in a racially motivated killing. The *Schlup* court concluded that the habeas court should consider this evidence to determine whether the new facts "raised sufficient doubt about Schlup's guilt to undermine confidence in the result of the trial without assurance that the trial was untainted by constitutional error." 115 S.Ct. at 317.

The 3.850 court in this case evaluated petitioner's alibi witnesses in the order denying post conviction relief. Applying *Strickland*, it found that the alibi witnesses had close, personal ties with the petitioner, that one was petitioner's live-in girlfriend and the other was petitioner's mother, who depended on him for personal care, and "the jury would necessarily have to consider their testimony with a jaundiced eye." (Exh. M, p. 9). Given the procedural posture of this case, this court owes the opinion of the 3.850 court no particular deference, but that court points out the obvious. Petitioner's alibi evidence is not of the same force as the evidence the *Schlup* Court found would justify an evidentiary hearing. For those reasons, the court finds that petitioner has failed to carry his burden of showing this is one of the rare cases in

which a miscarriage of justice has occurred.  Petitioner's claim of ineffective assistance of counsel is defaulted and procedurally barred.

If the court were to consider the claim on the merits, the result would be the same.  In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." 466 U.S. at 693, 104 S.Ct. at 2067. Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). Here the 3.850 court found that petitioner could not establish prejudice because of the questionable value of the alibi evidence in light of the direct identity evidence from the victims. The court went on to note that defense counsel in fact "did an *exemplary* job in representing Defendant." (Exh. M, p. 10) (emphasis in original). This court's review of the trial transcript confirms these determinations. Under the *Strickland* standard, petitioner cannot show that a reasonable probability exists that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 20 U.S.C. § 2245(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

2. <u>Procedural due process - denial of right to confront witness.</u>

For his second ground for relief petitioner contends that he was denied the right to confront a witness against him. The respondent concedes that this claim

was presented to the state court in petitioner's direct appeal. The witness in question, Alderman, testified on direct that she could identify petitioner because she saw him that night. On cross, defense counsel established that the offense took place at night in a residential neighborhood, it was dark, and there was light only from a streetlight. On redirect Alderman was asked about lighting, and she volunteered that there was a dome light in the car that came on when petitioner got in and out of the car. When the prosecutor was finished, defense counsel said; "Your Honor, one more thing." The court responded that it did not allow re-cross and denied the request.

Petitioner says that this deprived him of his right to confront a witness. He says that the dome light evidence was "new" evidence that his attorney should have been allowed to inquire into. He explains that if counsel had been able to question Alderman further he could have cast doubt on her ability to see petitioner because she was driving at night in an unfamiliar area, a stranger came up beside the car just before the assault and asked for a cigarette, she gave the police a description that did not resemble petitioner, and her demeanor was questionable.

Respondent contends that this issue should not be reviewed in this court because it concerns only a matter of state law and, regardless of how petitioner characterizes the claim, it is nothing more than an attack on an evidentiary ruling. Respondent is correct. Federal habeas relief is available to correct only constitutional injury. 28 U. S. C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional

significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger,* 941 F.2d 1551 (11th Cir. 1991), *cert. denied,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992) (quoting *Carrizales, supra*). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d at 1560. Similarly, "[f]ederal courts generally do not review a state court's admission of evidence in habeas corpus proceedings . . . [and] will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 352, 110 S.Ct. 668.

       The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent. The reason for that is obvious. Petitioner asserts that if counsel had been able to question Alderman further he could have cast doubt on her ability to see petitioner, because she was driving at night in an unfamiliar area, because a stranger came up beside the car just before the assault and asked for a cigarette, because she gave the police a description that did not resemble petitioner, and because her demeanor was questionable. What petitioner ignores is that all of these alleged weaknesses in Alderman's testimony could have been explored in cross-examination. Indeed defense counsel pointed out in cross that it was dark and there was not much light, and all the questions petitioner suggests could have been asked in re-cross could have been asked earlier. The only thing "new" in re-direct was the existence of a dome light, and petitioner does not explain how his attorney could have made Alderman change her story and say there was in fact no dome light. In short, there was nothing about the dome light that merited further exploration. Denial of the right

to re-cross was not so critical or important to the outcome of the trial to render the entire trial fundamentally unfair.  Further cross-examination would not have accomplished anything meaningful that could not have been done in cross.

Moreover, even if the court were to review the merits, the claim would fail for the obvious reasons discussed earlier.  All the questions petitioner says his counsel could have asked could have been asked on cross.  The "new" evidence that a dome light existed was not reasonably subject to meaningful inquiry, nor could it have afforded a vehicle for effective impeachment of the witness.  The state appellate court affirmed petitioner's conviction after considering this issue.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED that the amended petition for writ of habeas corpus, (doc. 6) challenging the conviction and sentence in the case of *State of Florida v. Paul Sinkfield*, in the Circuit Court of Escambia County, Florida, case nos. 98-2297, be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of October, 2005.

/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:04cv111/MCR/MD*